IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**J & J SPORTS PRODUCTIONS, INC.**                                                                  **PLAINTIFF**

V.                                    CASE NO. 5:15-CV-5199

**EDWARD VEGA, individually and**
**d/b/a SPRINGDALE CIVIC CENTER**                                                       **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Defendant Edward Vega's Motion to Amend Answer (Doc. 34) and Plaintiff J & J Sports Productions, Inc.'s ("J&J") Opposition (Doc. 35). For the reasons given below, Mr. Vega's Motion is **GRANTED IN PART AND DENIED IN PART**.

### I.  BACKGROUND

J&J alleges in its Complaint (Doc. 1) that Mr. Vega knowingly intercepted and published without authorization a televised fight between Floyd Mayweather, Jr. and Saul Alvarez to which J&J had exclusive nationwide commercial distribution rights. *Id.* at ¶ 14. The Complaint asserts three counts against Mr. Vega: violation of 47 U.S.C. § 605, violation of 47 U.S.C. § 553, and a state-law claim for conversion. Mr. Vega filed his Answer (Doc. 10) to the Complaint on December 7, 2015, his Amended Answer (Doc. 15) on January 6, 2016, and his Second Amended Answer (Doc. 29) on March 2, 2016. He now seeks leave to file a proposed Third Amended Answer (Doc. 34-2), in order to plead several new affirmative defenses. Specifically, his proposed Third Amended Answer puts forward four affirmative defenses: (1) that Mr. Vega is not the proper defendant, but rather that the Springdale Civic Center ("SCC") is; (2) that the SCC was authorized to receive

1

the signal for the fight program; (3) that the fight program was received via an internet signal rather than a satellite television or cable television signal; and (4) that the fight program's display at the SCC was time-delayed rather than intercepted. The first of these four affirmative defenses was asserted in the Second Amended Answer, see Doc. 29, ¶ 33, but the latter three appear to be newly proposed. J&J opposes Mr. Vega's Motion, which has been fully briefed and is now ripe for decision.

## II.  LEGAL STANDARD

Since Mr. Vega has already amended his responsive pleading before, he may do so again "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Here, as noted above, J&J does not consent to the proposed amendment. Therefore, Mr. Vega's proposed Third Amended Answer may be filed only with the court's leave, which should be "freely give[n] . . . when justice so requires." Id. However, "[a] district court may appropriately deny leave to amend where there are compelling reasons such as undue delay, bad-faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1065 (8th Cir. 2005) (internal quotation marks omitted). Generally, though, delay is insufficient to justify denying leave, absent prejudice to the opposing party. See id. As for futility, "a motion to amend should be denied on the merits only if it asserts clearly frivolous claims or defenses," and "[l]ikelihood of success on the new claim or defenses is not a consideration for denying leave to amend unless the claim is clearly frivolous." Becker v. Univ. of Neb. at Omaha, 191 F.3d 904, 906 (8th Cir. 1999).

A party opposing amendment on the grounds of prejudice or futility bears the burden of demonstrating unfair prejudice or establishing futility. *Concrete Washout Sys., Inc. v. Double D Hook-N-Go Containers, Inc.*, 2009 WL 2840515, at *2, *3 (D. Neb. Aug. 28, 2009) (citing *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001); *Sokolski v. Trans Union Corp.*, 178 F.R.D. 393, 396 (E.D.N.Y. 1998)). Ultimately, the decision whether to grant leave to amend a pleading "is left to the sound discretion of the district court," and will be overruled on appeal only if such discretion is abused. *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998).

### III.  DISCUSSION

J&J opposes Mr. Vega's Motion on the grounds that it is brought after undue delay, that granting it would prejudice J&J, and that Mr. Vega's newly-proposed affirmative defenses would be futile. The Court notes, as an initial matter, that J&J only makes these arguments with any specificity as to two of Mr. Vega's proposed defenses: the third affirmative defense that the fight program was received via an internet signal rather than a satellite television or cable television signal, and the fourth affirmative defense that the fight program's display at the SCC was time-delayed rather than intercepted. *See* Doc. 35, p. 9 & n.7. J&J argues that since Mr. Vega's Motion did not advance any specific arguments in support of the first and second proposed affirmative defenses, Mr. Vega should not be permitted to file them. But this misstates the burden, which is J&J's—not Mr. Vega's. *See* Section II *supra*. Since J&J has made no attempt at meeting its burden with regard to Mr. Vega's first two proposed affirmative defenses, Mr. Vega's Motion will be granted as to those two defenses, and Mr. Vega will be permitted to plead them.

3

Turning to J&J's arguments against Mr. Vega's third and fourth affirmative defenses, J&J's only argument for a finding of prejudice is that if either of these proposed affirmative defenses is meritorious, then "it would essentially leave [J&J] without a remedy." (Doc. 35). But of course the very nature of *any* meritorious defense is to preclude relief, at least to some extent. The proper question here is not whether prejudice exists, but whether such prejudice is "undue." *See Bell*, 160 F.3d at 454. Currently, the discovery deadline is three-and-a-half months away, the dispositive motions deadline is four months away, and the trial is eight-and-a-half months away. *See* Doc. 27, pp. 1–3. To whatever extent Mr. Vega's proposed amendments may require additional discovery or legal research by J&J, there is ample time remaining for such efforts.

Therefore, the Court finds that permitting Mr. Vega to plead his proposed third and fourth affirmative defenses would not unduly prejudice J&J. And as noted above in Section II of this Order, undue delay is an insufficient basis for denying leave in the absence of any undue prejudice. The Court turns, then, to J&J's sole remaining argument—that Mr. Vega's proposed third and fourth affirmative defenses are futile. For analytical ease, the Court will deal first with Mr. Vega's proposed fourth affirmative defense, and then with his third.

Mr. Vega's proposed fourth affirmative defense states:

> The subject TV program was displayed at a time delay at the subject establishment. Thus, there was no interception and no signal piracy violation. Furthermore, the plaintiff does not have standing because it was not a simultaneous (live) exhibition and the plaintiff's licensing rights only apply to live exhibitions.

*See* Doc. 34-2, p. 4. This defense appears actually to be *two* defenses, then: that there was no interception, and that J&J lacks standing.

4

In response, J&J cites only *Nat'l Satellite Sports, Inc. v. Garcia*, 2003 WL 21448375, at *3 n.2 (N.D. Tex. June 18, 2003), and *J & J Sports Prods. Inc. v. Mosqueda*, 2013 WL 2558516, at *3 (D. Ariz. June 11, 2013), for the proposition that "[a] tape-delayed broadcast without authorization is still a violation of the [Federal Communications Act]." While that is indeed what those two cases say, neither of those opinions appears to involve any dispute as to whether the scope of those particular plaintiffs' licensing agreements covered the exhibitions that were at issue. *See Garcia*, 2003 WL 21448375, at *1 ("Garcia did not pay the required license fee, and National did not authorize her to intercept, receive, or transmit the communication of the Event."); *Mosqueda*, 2013 WL 2558516, at *3 ("It is not disputed that Plaintiff had exclusive commercial distribution rights over the Program and that a license for Adrian's Restaurant would have cost $1,800. Defendant has produced no evidence to refute that the Program was broadcast at Adrian's Restaurant without authorization."). Thus, neither of those cases appears to conclusively foreclose Mr. Vega's standing defense on its face. Since J&J has not provided any other argument or authority in opposition to Mr. Vega's standing defense, J&J has not met its burden of establishing that defense's futility.[1]

However, the cases cited by J&J *do* meet its burden of establishing the futility of Mr. Vega's "no interception" defense. As explained in *Kingvision Pay Per View, Ltd. v. Julian Corp.*, which was cited for this proposition in *Garcia*, 47 U.S.C. § 605 does not merely prohibit interception, but also unauthorized divulgence or publication of covered

---

[1] The Court's discussion here of Mr. Vega's proposed "standing" defense should not be interpreted by the parties as establishing any law of the case, beyond the bare ruling that this defense does not presently appear "clearly frivolous" to the Court. This narrow ruling does not preclude the Court from finding, at some later point in this case, that this defense is or is not sufficient to preclude liability on the part of Mr. Vega as to any of J&J's claims.

communications. 1996 WL 496600, at *2 (N.D. Ill. Aug. 29, 1996). This Court concurs in that reading of the statute, as the plain text of both Section 605 and Section 553 prohibits far more than mere interception. *See* 47 U.S.C. § 605(a) ("[N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall *divulge or publish* the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception . . . ." (emphasis added)); 47 U.S.C. § 553(a)(1) ("No person shall . . . *receive or assist in . . . receiving* any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." (emphasis added)). J&J's Complaint does not merely allege that Mr. Vega intercepted the fight program; rather, it alleges that he intercepted, received, published, exhibited, divulged, or displayed the fight program. *See* Doc. 1, ¶¶ 17, 24. In other words, even if Mr. Vega were to prove that he did not intercept the fight program, such proof would be insufficient to defeat J&J's statutory claims. Accordingly, Mr. Vega's proposed "no interception" defense is futile.

The Court turns now to Mr. Vega's proposed third affirmative defense, which states that the fight program "was received via an internet signal (not a satellite TV signal or cable TV signal), and thus defendants cannot be liable for [J&J]'s claims." (Doc. 34-2, p. 3). Mr. Vega cites some cases that can perhaps be read as endorsing his argument that the federal statutes under which J&J's claims are brought do not apply to communications that are received over the Internet. *See, e.g.*, *Joe Hand Promotions, Inc. v. Michael Cusi, et al.*, 2014 WL 1921760, at *3 n.4 (S.D. Cal. May 14, 2014) ("The Court has no confidence in this assumption [that the type of internet service determines whether liability

6

exists under Sections 553 and 605] and is generally [s]keptical that feeds received over the internet from a *third party* violate Sections 553 or 605." (emphasis in original)).  The Court has read all of the cases cited by Mr. Vega, and can only conclude that to whatever extent they endorse Mr. Vega's argument on this point, this Court respectfully disagrees with them.  The Court notes furthermore that none of them are binding precedent or from within the Eighth Circuit.

     A straightforward reading of the statutes' pertinent text leads this Court to conclude that it is irrelevant whether the signal in this case was sent over the Internet.  The statutes here say nothing one way or the other about the Internet; rather, they are explicitly concerned with whether unauthorized communications were sent or received "by wire or radio," 47 U.S.C. § 605(a), or "over a cable system," 47 U.S.C. § 553(a)(1).  J&J will bear the burden of proving these elements of its statutory claims are satisfied.  Maybe J&J will meet that burden or maybe it won't, but it will make no difference to this Court in either event whether the wires, radio waves, or cable system in question interacted with or were part of the Internet.  *Cf. United States v. Napier*, 787 F.3d 333, 346–47 (6th Cir. 2015) (finding that electronic communications sent over the Internet "were transmitted through interstate wires"); *In re DoubleClick Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 508 (S.D.N.Y. 2001) ("Internet access" is one type of "service which provides to users thereof the ability to send or receive wire or electronic communications.")  Thus, since Mr. Vega's proposed third affirmative defense would ultimately make no difference in this case, it is futile and Mr. Vega will not be granted leave to plead it.

## IV.  CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Edward Vega's Motion to Amend Answer (Doc. 34) is **GRANTED IN PART AND DENIED IN PART** as follows:  Mr. Vega may file his Third Amended Answer, except that it shall not include the following language that was proposed by Mr. Vega at Doc. 34-2, pp. 3–4:

> The subject TV program was received via an internet signal (not a satellite TV signal or cable TV signal), and thus defendants cannot be liable for plaintiff's claims.  *See, e.g.*, *Joe Hand Promotions, Inc. v. Cusi*, 2014 U.S. Dist. LEXIS 66474 (S.D. Cal. May 14, 2014).
>
> ### FOURTH AFFIRMATIVE DEFENSE
>
> The subject TV program was displayed at a time delay at the subject establishment.  Thus, there was no interception and no signal piracy violation.

Mr. Vega's Third Amended Answer may be filed by no later than August 4, 2016.

**IT IS SO ORDERED** on this 2nd day of August, 2016.

                                              */s/ Timothy L. Brooks*
                                              TIMOTHY L. BROOKS
                                              UNITED STATES DISTRICT JUDGE